COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Senior Judge Hodges
Argued at Alexandria, Virginia


HOWARD PIKE
                                            OPINION BY
v.         Record No. 0905-96-4    JUDGE JERE M. H. WILLIS, JR.
                                          MARCH 25, 1997
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                       Thomas D. Horne, Judge

          Steven A. Merril (Whitestone, Brent, Young &
          Merril, on briefs), for appellant.

          Kimberley A. Whittle, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Howard Pike was convicted in a bench trial in the Circuit

Court of Loudoun County of four counts of brandishing a firearm

in violation of Code § 18.2-282.  He contends that the evidence

is insufficient to sustain a finding of guilt.  We disagree and

affirm the judgment of the trial court.

     Under familiar principles, we view the evidence in the light

most favorable to the Commonwealth.  Martin v. Commonwealth, 4

Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  "The judgment of

a trial court sitting without a jury is entitled to the same

weight as a jury verdict and will not be set aside unless it

appears from the evidence that the judgment is plainly wrong or

without evidence to support it."  Josephs v. Commonwealth, 10 Va.

App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc).

     On August 19, 1995, Pike discovered Cablevision employees

attaching cable lines to utility poles located on his property. Pike demanded that they leave his property and called the police. Deputy Shellhammer of the Loudoun County Sheriff's Department arrived at the scene, directed the Cablevision employees to leave, and recommended that the parties contact their attorneys. Pike testified that the Cablevision workers damaged several small trees, left tire ruts in his field and broke a fence.

On September 8, 1995, Pike's attorney advised Cablevision that any attempt by Cablevision to enter Pike's land "will be treated as a trespass and will be dealt with accordingly." On that same day, Cablevision informed Pike's attorney that it had a utility easement and would continue work on the property the following week. On September 12, 1995, Cablevision employees returned to Pike's property and resumed stringing cable. As Pike was leaving for work that day, he saw the Cablevision workers on his property. He approached their supervisor, advised him that they were trespassing, and ordered them to leave. Pike testified that the supervisor told him that the police were not going to interfere and that the Cablevision employees would not leave the property.

Pike returned to his house, telephoned the police, obtained a shotgun, and returned to the worksite. He testified that upon exiting his vehicle, he held the shotgun at port arms and ordered the Cablevision workers off of his property. He testified that the Cablevision workers agreed to leave, and he placed the

shotgun in his vehicle.

The Cablevision workers testified that Pike pumped the shotgun, pointed it directly at each of them with his finger on the trigger, and angrily demanded that they leave his property. They testified that they thought he might shoot them and that they feared for their lives. They testified that Pike held the gun on them for approximately five minutes, while they loaded their equipment and prepared to leave.

> Code § 18.2-282(A) provides, in pertinent part:
>       It shall be unlawful for any person to
> point, hold or brandish any firearm . . .
> whether capable of being fired or not, in
> such manner as to reasonably induce fear in
> the mind of another . . . .

Viewed in the light most favorable to the Commonwealth, the evidence proved that Pike's conduct violated the express prohibition of the statute. However, Pike contends that his conduct was excusable, because he was acting in defense of his property.

The common law in this state has long recognized the right of a landowner to order a trespasser to leave, and if the trespasser refuses to go, to employ proper force to expel him, provided no breach of the peace is committed in the outset. Montgomery v. Commonwealth, 99 Va. 833, 37 S.E. 841 (1901). Absent extreme circumstances, however, such force may not endanger human life or cause great bodily harm. Montgomery v. Commonwealth, 98 Va. 840, 36 S.E. 371 (1900).

- 3 -

Citing Diffendal v. Commonwealth, 8 Va. App. 417, 382 S.E.2d 24 (1989), Pike argues that he was privileged to brandish a firearm to expel the Cablevision employees.  In Diffendal, we "conclude[d] that a factual issue was raised whether [the defendant's] pointing of the shotgun was reasonably proportioned to the perceived threat posed by" an armed trespasser's presence on the property.  Id. at 422, 382 S.E.2d at 26.  Thus, we held, the trial court in Diffendal erred in refusing to instruct the jury that the defendant was privileged to use reasonable force in defense of the property and himself.

Credible evidence proved that Pike brandished the shotgun in a manner that reasonably caused fear in the minds of the Cablevision workers.  The trial court examined the underlying circumstances and concluded that the production of the shotgun, under circumstances of angry confrontation, was unreasonable in terms of any privilege that Pike may have had to defend his property.  The evidence supports this conclusion.  The brandishing of the shotgun was disproportionate to any threat posed by the unarmed cable workers, irrespective of the legality of Cablevision's conduct.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.